UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>                  Plaintiff,<br><br>    v.<br><br>SURFACE TRANSPORTATION BOARD and UNITED STATES OF AMERICA,<br><br>                  Defendants. | CASE NO.:<br><br>**COMPLAINT** |

WILLIAM MULLINS*
wmullins@bakerandmiller.com
CRYSTAL ZORBAUGH*
czorbaugh@bakerandmiller.com
BAKER & MILLER PLLC
2401 Pennsylvania Ave., NW, Ste. 300
Washington, DC 20037
Telephone: (202) 663-7820
Facsimile:  (202) 663-7849

ALAN D. WINGFIELD (VSB No. 27489)
alan.wingfield@troutman.com
MICHAEL E. LACY (VSB No. 48477)
michael.lacy@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point, Ste. 1500
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339

JOHN C. LYNCH (VSB No. 39267)
john.lynch@troutman.com
KATHLEEN M. KNUDSEN (VSB No. 90845)
kathleen.knudsen@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510

SHAY DVORETZKY*
shay.dvoretzky@skadden.com
TARA L. REINHART*
tara.reinhart@skadden.com
PARKER RIDER-LONGMAID*
parker.rider-longmaid@skadden.com
THOMAS R. GENTRY*
thomas.gentry@skadden.com
HANAA KHAN*
hanaa.khan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile:  (202) 393-5760

*Pro hac vice motion forthcoming*

Attorneys for Plaintiff NORFOLK SOUTHERN RAILWAY COMPANY

Plaintiff Norfolk Southern Railway Company (NSR) alleges:

## INTRODUCTION

1. This complaint challenges two rulings in the Surface Transportation Board's (STB or Board) decision in *Norfolk Southern Railway Company—Petition for Declaratory Order*, STB No. FD 36522, Decision, 2022 WL 2191932 (June 17, 2022) (STB Decision), attached as Exhibit A. In that decision, the STB erroneously held that its predecessor, the Interstate Commerce Commission (ICC), had not authorized NSR to control one of its subsidiaries, the Norfolk & Portsmouth Belt Line Railway Company (Belt Line). The STB Decision is contrary to ICC and STB regulations and inadequately explained, making it arbitrary, capricious, and invalid. *See* 5 U.S.C. § 706(2)(A). Although NSR believes that the United States Court of Appeals for the District of Columbia Circuit has exclusive jurisdiction to review challenges to the relevant STB rulings and thus has also challenged the STB Decision before that court, *see Norfolk S. Ry. Co. v. STB*, No. 22-1209 (D.C. Cir. Aug. 15, 2022), NSR files this complaint protectively given the 90-day window for seeking judicial review. *See* 28 U.S.C. § 1336(c).

2. The STB Decision follows this Court's referral to the Board, in *CSX Transportation, Inc. v. Norfolk Southern Railway Co. et al.*, No. 2:18-cv-00530, ECF No. 395 (E.D. Va.) (Davis, C.J.), of questions relating to antitrust immunity. In *CSX*, CSX Transportation, Inc. (CSX), claims that NSR violated federal antitrust and state conspiracy laws by conspiring with Belt Line to deny CSX rail access to intermodal shipping at the Norfolk International Terminals. But those claims are barred by the statutory immunity for rail carriers participating in transactions approved or exempted by the ICC or STB. *See* 49 U.S.C. § 11321(a). NSR thus moved to dismiss CSX's complaint, or, in the alternative, to refer immunity-related questions to the STB. NSR explained that the ICC had authorized NSR to control Belt Line in 1982 when it approved a consolidation of rail carriers: the ICC granted NWS Enterprises, Inc. (NWS), a noncarrier holding

2

company, authority to control Norfolk and Western Railway Company (NW) and Southern Railway Company (SRC). (NWS was renamed Norfolk Southern Corporation (NSC) during the proceedings, and SRC became NSR and gained control through later transactions.) That approval, NSR continued, made NSR immune from claims arising from its control of Belt Line under § 11321(a).

3. In response, this Court referred two questions to the STB:

> [1] Did the 1982 consolidation, whereby NSC acquired an indirect 57 percent interest in Belt Line, involve the ICC/STB granting NSC "approval" to control Belt Line, and if so, [2] did such authorized "control" render it necessary for antitrust and/or state conspiracy laws to yield, whether because Belt Line was then deemed a "franchise" of NSC, or for any other reason?

*CSX*, No. 2:18-cv-00530, ECF No. 395, at 29. NSR then petitioned the STB to institute declaratory proceedings.

4. Once the STB agreed to address NSR's petition on the referred questions, NSR also raised two additional questions not raised before this Court. This Court's referral order asked whether the ICC authorized NSC (and thus the later entity NSR) to control Belt Line in the 1982 consolidation. Before the STB, however, NSR additionally argued that the ICC and STB authorized NSR to control Belt Line in two subsequent transactions known as corporate-family-exemption transactions—one in 1991 and one in 1998.

5. The STB rejected NSR's arguments. It concluded that the ICC did not authorize NSR to control Belt Line in the 1982 consolidation. It also concluded that neither the ICC, by approving the 1991 corporate-family-exemption transaction, nor the STB, by approving the 1998 corporate-family-exemption transaction, authorized NSR to control Belt Line.

6. NSR now brings this complaint protectively under 28 U.S.C. § 1336(b), challenging the STB's rejection of its arguments about the 1991 and 1998 transactions. NSR first asks the Court to hold this appeal in abeyance pending the D.C. Circuit's resolution of *Norfolk*

3

*Southern Railway Co.*, No. 22-1209. If the D.C. Circuit concludes that it does not have exclusive jurisdiction over NSR's challenges, however, then NSR asks the Court to review, vacate, and set aside the STB Decision on the grounds that the STB's rejection of its 1991 and 1998 arguments was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## PARTIES

7.      Plaintiff NSR is a Class 1 railroad operating in the eastern United States. NSR is incorporated under Virginia law and its principal place of business is in Atlanta, Georgia. Among other things, NSR transports containers to and from East Coast ports, like the Port of Virginia, where ships carry them in interstate and international commerce.

8.      Defendant STB is an independent federal agency charged with the economic regulation of various modes of surface transportation, primarily freight rail. The STB replaced the ICC in 1996.

9.      Defendant United States of America acted through its agency, the STB.

## JURISDICTION AND VENUE

10.     NSR brings this complaint protectively, believing that the D.C. Circuit has exclusive jurisdiction and is the proper venue for NSR's claims under 28 U.S.C. §§ 2342(5) and 2343. If the D.C. Circuit does not have jurisdiction, however, then this Court must have jurisdiction under 28 U.S.C. § 1336(b).

11.     Under 28 U.S.C. § 1336(b), a district court that "refers a question or issue to the Surface Transportation Board for determination, … shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Surface Transportation Board arising out of such referral." But for issues outside the scope of the referral, "[t]he court of appeals … has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in

4

part), or to determine the validity of … all rules, regulations, or final orders of the Surface Transportation Board ….." 28 U.S.C. § 2342(5); *see also id.* § 2321. The D.C. Circuit has made clear that "issues expressly set out in the district court's referral order are reviewed by the district court" under § 1336(b), while "[t]he court of appeals reviews all other issues" under §§ 2321(a) and 2342(5). *McCarty Farms, Inc. v. STB*, 158 F.3d 1294, 1300 (D.C. Cir. 1998).

12. Because the 1991 and 1998 transactions were outside the scope of this Court's referral of the 1982 question to the STB, NSR has filed a petition for review in the D.C. Circuit. *See* Pet. for Review, *Norfolk S. Ry. Co.*, No. 22-1209.

13. If the D.C. Circuit does not have jurisdiction under §§ 2321(a) and 2342(5), however, then this Court has jurisdiction under § 1336(b) because the STB issued the conclusions as to the 1991 and 1998 transactions that NSR challenges in this complaint in the same decision in which it addressed the questions as to the 1982 consolidation referred to it by this Court. This complaint is proper to protect jurisdiction before a federal court given the possible jurisdictional dispute. *Cf. Western Union Tel. Co. v. FCC*, 773 F.2d 375, 380 (D.C. Cir. 1985) (urging parties to file protective petitions when jurisdictional questions arise); *Recreation Vehicle Indus. Ass'n v. EPA*, 653 F.2d 562, 569 (D.C. Cir. 1981) ("As a general rule, of course, counsel would be wise to file a protective petition for review ….").

14. If this Court has jurisdiction under § 1336(b), then venue is also proper in this Court under § 1336(b), because "the court which referred the question or issue shall have exclusive jurisdiction." 28 U.S.C. § 1336(b).

## STATEMENT

### I. Legal background

15. By statute, "[a]cquisition of control of a rail carrier by any number of rail carriers" "may be carried out only with the approval and authorization of the Board." 49 U.S.C.

5

§ 11323(a)(3). A carrier that obtains STB approval (or obtained ICC approval), or an exemption from STB or ICC approval, "is exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that rail carrier … carry out the transaction, hold, maintain, and operate property, and exercise control or franchises acquired through the transaction." *Id.* § 11321(a).

16. Under ICC/STB regulations in effect in 1991 and 1998 and today, "control" means

> the possession directly or indirectly, of the power to direct or cause the direction of the management and policies of a company, whether such power is exercised through one or more intermediary companies, or alone, or in conjunction with, or pursuant to an agreement, and whether such power is established through a majority of minority ownership or voting of securities, common directors, officers or stockholders, voting trusts, holding trusts, associated companies, contract or any other direct or indirect means.

49 C.F.R. § 1201ii(5)(b). Indeed, the STB considers control a multifaceted, "flexible" inquiry, taking into account factors like "distribution of the remaining stock, the ability to elect directors and otherwise control or influence decision-making machinery, and the existence of management, marketing, operating and financial ties." *Paducah & Louisville Ry., Inc.—Control Exemption—Paducah & Ill. R.R.*, STB No. FD 33362, Decision, 1997 WL 487405, at 2 (Aug. 12, 1997).

17. In 1991 and 1998, just as today, proposed transactions under § 11323 involving more than one common rail carrier were classified as major, significant, minor, or exempt. 49 C.F.R. § 1180.2 (1985). "Exempt" transactions did (and do) not require prior review and approval by the ICC or STB. *Id.* § 1180.2(d). Instead, the applicants must simply file a notice with the agency, *id.*, which would then publish a notice of exemption, thereby approving it, *id.* § 1180.4(g)(iii). One class of exempt transactions was (and is) "[t]ransactions within a corporate family that do not result in adverse changes in service levels, significant operational changes, or a change in the competitive balance with carriers outside the corporate family," also known as the corporate-family exemption. *Id.* § 1180.2(d)(3). In other words, rail carriers could (and can)

reorganize their corporate family structure when doing so did (or does) not risk certain harms to outside entities.

## II. Factual background

### A. The 1982 consolidation

18. On December 4, 1980, NW and SRC, along with other initiating parties, filed an application asking the ICC to authorize NWS to acquire control of NW and its subsidiaries and SRC and its certain companies designated as "consolidated system companies." The application's appendix mentioned Belt Line along with all the other railroad companies in which NW or SRC held an ownership interest. It indicated that NW owned 28.57% of Belt Line, SRC owned 14.29%, and Norfolk Southern (a subsidiary of SRC) owned 14.28%, for a total of 57.14%.

19. On March 19, 1982, the ICC granted the application.

20. As the appendix to the application indicated, after the 1982 consolidation, NSC controlled 57.14% of Belt Line based on combined total shares. The 1982 consolidation also gave NSC the votes to elect the majority of the members on the Board of Directors of Belt Line and the ability to direct the Board whom to appoint as President.

### B. The 1991 and 1998 transactions

21. In 1991, SRC changed its name to NSR and the ICC granted NSR authority to directly control NW pursuant to the corporate-family exemption, 49 C.F.R. § 1180.2(d)(3). This transaction placed NSR in direct control of former-SRC's 28% of Belt Line and indirect control of NW's 28% share of Belt Line.

22. In 1998, the STB (which had replaced the ICC in 1996) granted approval, again under the corporate-family exemption, for NW to merge into NSR. The transaction combined NW's 28% share of Belt Line with NSR's 28% share to give NSR direct control over 57% of Belt Line.

### III. Procedural background

#### A. CSX sues NSR and Belt Line for conspiring to deprive CSX of rail access to the Norfolk International Terminals.

23. On October 4, 2018, CSX sued NSR and Belt Line in this Court, alleging antitrust, conspiracy, and contract law violations arising from NSR and Belt Line's alleged actions to deprive CSX of rail access to the Norfolk International Terminals. *CSX*, No. 2:18-cv-00530, ECF No. 1 (Davis, C.J.).

24. NSR moved to dismiss, arguing that it is immune from CSX's antitrust and conspiracy claims under 49 U.S.C. § 11321(a) because the ICC had authorized it to control Belt Line as part of the 1982 railway consolidation. *CSX*, No. 2:18-cv-00530, ECF No. 116, at 9-10. Alternatively, NSR asked this Court to refer the questions to the STB. *Id.* at 11-13.

25. On May 18, 2021, this Court referred questions about antitrust immunity from the 1982 consolidation to the STB. *CSX*, No. 2:18-cv-00530, ECF No. 395. The Court first noted that "the STB and federal courts have repeatedly held that § 11321 [immunity] is *not* predicated on the agency 'announcing that a particular exemption is necessary'; rather, the immunity exemption is 'self-executing.'" *Id.* at 18-19 (citation omitted). The Court concluded that the STB was the "proper authority to clarify the contours of the 1982 consolidation." *Id.* at 22. In the Court's view, the parties presented "conflicting defensible positions regarding a matter squarely within the STB's expertise," making referral "not only appropriate but arguably necessary." *Id.* at 25-26.

26. The two questions the Court referred to the STB were:

> [1] Did the 1982 consolidation, whereby NSC acquired an indirect 57 percentage interest in Belt Line, involve the ICC/STB granting NSC "approval" to control Belt Line, and [2] if so, did such authorized "control" render it necessary for antitrust and/or state conspiracy laws to yield, whether because Belt Line was then deemed a "franchise" of NSC, or for any other reason?

*Id.* at 29.

### B. The STB determines that the ICC did not authorize NSC to control Belt Line.

27. On June 21, 2021, NSR filed a petition with the STB asking the Board to address in a declaratory order the issues this Court had referred to it.

28. On August 9, 2021, the STB instituted a declaratory order proceeding to address those questions. STB No. FD 36522.

29. Before the STB, NSR first argued that the ICC authorized it to control Belt Line in the 1982 consolidation, just as it had before this Court. NSR Opening Statement, STB No. FD 36522, 4-12; NSR Reply, STB No. FD 36522, 32-36; *see CSX*, No. 2:18-cv-00530, ECF No. 116, at 9-13.

30. NSR additionally raised two issues it had not presented to this Court in *CSX*. NSR argued that the ICC in 1991 and the STB in 1998 had granted corporate-family-reorganization exemptions authorizing NSR to control Belt Line. NSR Opening Statement 13-14; NSR Reply 38-39. After the 1982 consolidation, NSC controlled Belt Line by owning a majority share and appointing the majority of the Board of Directors. In 1991, NSR explained, the ICC authorized it to control Belt Line through the corporate-family-exemption process by allowing NSR, which then directly owned 28.58% of Belt Line, to directly control NW, which owned 28.57% of Belt Line. NSR Opening Statement 13-14; NSR Reply 38-39. NSR further explained that the STB authorized NW to merge into NSR in 1998, giving NSR direct control of 57% of Belt Line. NSR Opening Statement 14; NSR Reply 39. In both the 1991 and 1998 transactions, the agency enabled NSR to further consolidate its control over Belt Line.

31. Because the ICC and STB had authorized it to control Belt Line, NSR explained, NSR and Belt Line were immune from antitrust scrutiny and state conspiracy law in *CSX* under 49 U.S.C. § 11321(a). NSR Opening Statement 15-19.

32. On June 17, 2022, the STB concluded that the ICC did not authorize NSR to control Belt Line and so the second question about immunity was moot. *See* Ex. A.

33. The STB began by answering the first question referred by this Court, determining that the ICC did not grant NSR control over Belt Line in the 1982 consolidation because the applicants had only explicitly requested control authorization for the consolidated system companies.

34. The STB then turned to NSR's arguments on the issues not referred—that the 1991 and 1998 transactions granted NSR control over Belt Line. The Board asserted without explanation that the corporate-family exemption contained an "implicit" requirement that "the member of the corporate family whose ownership is changing as a result of the transaction was previously authorized to be controlled by a member of the corporate family." STB Decision 16. The STB thus concluded that the exemption "could not have been used to grant authority to any member of NSC's corporate family to control [Belt Line] unless authority had previously been granted for some other member of that corporate family to control [Belt Line]." *Id.* In rejecting NSR's argument, the STB noted that "NSR's interpretation would allow the corporate family exemption to effectively nullify" other approval requirements and would undermine the STB and the public's notice of grants of control authorization. *Id.*

### C. NSR petitions the D.C. Circuit for review of the STB's conclusions about the 1991 and 1998 transactions.

35. On August 15, 2022, NSR filed a petition for review before the D.C. Circuit of the STB's conclusions about the 1991 and 1998 transactions. *See* Pet. for Review, *Norfolk S. Ry. Co.*, No. 22-1209. NSR has asked the D.C. Circuit to review, vacate, and set aside the STB Decision on the grounds that the STB's rejection of its 1991 and 1998 arguments was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the Administrative

Procedure Act, 5 U.S.C. § 706(2)(A). NSR did not seek review of the STB's resolution of the issue this Court referred to the STB—whether the 1982 consolidation authorized NSR to control Belt Line—and this protective complaint does not seek review of that referred issue, either. *See* Pet. for Review 4, *Norfolk S. Ry. Co.*, No. 22-1209.

36. As explained in its petition, NSR believes that the D.C. Circuit has jurisdiction under 28 U.S.C. §§ 2321(a) and 2342(5). "[I]ssues expressly set out in the district court's referral order are reviewed by the district court" under 28 U.S.C. § 1336(b), while "[t]he court of appeals reviews all other issues" under §§ 2321(a) and 2342(5). *McCarty*, 158 F.3d at 1300.

37. NSR files this complaint in an abundance of caution in case this Court instead has exclusive jurisdiction over NSR's claims under § 1336(b).

38. CSX filed a notice of NSR's D.C. Circuit petition before this Court in *CSX*, No. 2:18-cv-00530, ECF No. 412.

## CAUSES OF ACTION

### COUNT I

**Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A):**
**Decision Contrary to Regulations**

39. Plaintiff NSR repeats and realleges the allegations in paragraphs 1 through 38 as if fully set forth herein.

40. The Administrative Procedure Act provides that "[t]he reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

41. An agency acts in an arbitrary and capricious manner if its "application of the relevant standards was 'plainly erroneous or inconsistent with' the regulations." *Almy v. Sebelius*, 679 F.3d 297, 307 (4th Cir. 2012) (citation omitted).

11

42. The STB's application of the corporate-family-exemption regulation, 49 C.F.R. § 1180.2(d)(3), was arbitrary and capricious. The regulation provides that "[a] transaction is exempt if it is within one of the nine categories described," including "[t]ransactions within a corporate family that do not result in adverse changes in service levels, significant operational changes, or a change in the competitive balance with carriers outside the corporate family." NSR's 1991 and 1998 corporate-family-exemption transactions fulfilled both criteria: both transactions were within NSR's corporate family and did not result in any of the prohibited changes. And ever since the 1982 consolidation, NSC or NSR has held control over Belt Line through its 57% ownership share and appointment of the majority of the Board of Directors. *See* 49 C.F.R. § 1201ii(5)(b). The 1991 transaction authorized NSR to control NW and therefore approved NSR's direct control of SRC's 28% of Belt Line and indirect control of NW's 28% share of Belt Line. The 1998 transaction enabled NW to merge into NSR, combining NW's 28% share of Belt Line with NSR's 28% share to give NSR direct control over 57% of Belt Line. Both the 1991 and 1998 transactions further consolidated NSR's control over Belt Line, and by allowing those transactions, the STB approved NSR's control over Belt Line.

43. In rejecting NSR's arguments, the STB asserted that it was "implicit" in the corporate-family-exemption regulation "that the member of the corporate family whose ownership is changing as a result of the transaction was previously authorized to be controlled by a member of the corporate family." STB Decision 16. But the corporate-family-exemption regulation does not mention, much less purport to require, prior authorization of control.

44. The STB's conclusion is arbitrary and capricious because it is erroneous and inconsistent with the regulation. *See Almy*, 679 F.3d at 307. The STB's reasoning adds a new requirement found nowhere in the regulation.

## COUNT II

### Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A): Failure to Explain or Otherwise Exercise Reasoned Decisionmaking

45. Plaintiff NSR repeats and realleges the allegations in paragraphs 1 through 44 as if fully set forth herein.

46. "The 'requirement that agency action not be arbitrary and capricious'" under 5 U.S.C. § 706(2)(A) "includes a requirement that the agency adequately explain its result." *Snohomish County v. STB*, 954 F.3d 290, 301 (D.C. Cir. 2020) (quoting *Jost v. STB*, 194 F.3d 79, 85 (D.C. Cir. 1999)). The reviewing court "may not supply a reasoned basis for the agency's decision that the agency itself has not given." *Id.* (quoting *Jost*, 194 F.3d at 85).

47. Even assuming that the corporate-family-exemption regulation contains an "implicit" requirement "that the member of the corporate family whose ownership is changing as a result of the transaction was previously authorized to be controlled by a member of the corporate family," STB Decision 16; *see* 49 C.F.R. § 1180.2(d)(3), the STB did not adequately explain that conclusion. In just a single paragraph, the STB determined that NSR's interpretation of the corporate-family-exemption regulation would cause absurd results, but the STB didn't reconcile its "implicit" additional requirement with the text of the regulation it was interpreting. *See* STB Decision 16.

48. Because the STB did not "articulate the reasoning behind its decision with sufficient clarity to enable petitioners and this court to understand the basis for its decision," *Snohomish County*, 954 F.3d at 301 (citation omitted), the STB Decision is arbitrary and capricious.

**PRAYER FOR RELIEF**

49. NSR asks the Court to hold this case in abeyance pending the D.C. Circuit's resolution of *Norfolk Southern Railway Co.*, No. 22-1209.

50. If the D.C. Circuit determines that it does not have jurisdiction in *Norfolk Southern Railway Co.*, No. 22-1209, then NSR asks the Court to set aside and vacate the STB Decision as arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

Date: September 15, 2022

Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

*/s/ Alan D. Wingfield*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
TROUTMAN PEPPER HAMILTON SANDERS, LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

*Counsel for Plaintiff Norfolk Southern Railway Company*